2016 ND 160

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Claude Joseph MERCIER, Defendant and Appellant.**

No. 20150275.

Supreme Court of North Dakota.

Aug. 17, 2016.

Melanie Price Dornonville de la Cour, Assistant State's Attorney, Burleigh County State's Attorney's Office, Bismarck, N.D., for plaintiff and appellee.

Bobbi Brown Weiler, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶1] Claude Joseph Mercier appeals after he pled guilty to possession of methamphetamine and possession of drug paraphernalia, reserving the right to appeal the

denial of his motion to suppress evidence. Because the district court properly denied the motion to suppress, we affirm the criminal judgment.

I

[¶ 2] According to testimony at the suppression hearing, at around 11 p.m. on May 4, 2015, Bismarck Police Officer April McCarthy was dispatched to an area for a report of suspicious activity. The identified caller described the suspect as a white male wearing a black t-shirt, and believed this suspect and a female individual were trying to rob him. When Officer McCarthy arrived near the scene, she observed a male who matched the description given, later identified as Mercier, near the location indicated by the caller. She got out of her vehicle and asked Mercier for identification, which he said was in his backpack at a house across the street. When asked for his name, Mercier identified himself as "Dewayne Liggins" with a birth date of March 29, 1989, then as "Dewayne Liggins" with a birth date of March 2, 1989, and then again as the same individual but from South Dakota. Each time Officer McCarthy attempted to run this information through dispatch, it came back negative, or not on file.

[¶ 3] While Officer McCarthy was attempting to identify Mercier, Bismarck Police Officers Swenson and Bratsch also arrived on the scene. Officer Swenson came to the scene because he recognized the name Dewayne Liggins when he heard it over the radio. Swenson informed McCarthy that he had known a Dewayne Liggins previously and that he was an African–American male. When Mercier informed the officers his backpack containing his identification was across the street, the officers asked him whether they could "go get the backpack." Mercier gave the officers a description of the backpack, and

when Officer Bratsch went to retrieve the described backpack, someone at the house told him "this is C.J.'s." The name differed from the one Mercier had been giving the officers. The record is silent as to whether the backpack was retrieved from inside or outside the house where Mercier said it was located. Upon Officer Bratsch's return with the backpack, Mercier confirmed it was his. He declined to allow the officers to search the backpack themselves, but was allowed to go through it slowly himself to obtain his identification. When asked whether there were any weapons in the backpack, Mercier replied there was a knife. The officers then placed Mercier in handcuffs for safety purposes and searched him. While searching him, Officer Bratsch pulled Mercier's wallet out of his pocket and found it contained two identification cards, one belonging to Claude Mercier and one to Dwayne Liggins, as well as some marijuana.. After running the correct name and date of birth through dispatch, the officers discovered Mercier had active warrants for his arrest. He was arrested, placed in the back of a squad car, and read his *Miranda* rights. The officers searched Mercier's backpack, finding several items that had been reported stolen as well as methamphetamine and drug paraphernalia. Mercier was initially arrested and held on possession of stolen property, possession of marijuana, false information to law enforcement, two counts of possession of drug paraphernalia, and ingestion of a controlled substance.

[¶ 4] After Mercier was formally charged with possession of drug paraphernalia and possession of methamphetamine, he moved to suppress evidence, claiming the police officers' questioning of him and searches of his backpack and wallet were illegal searches and seizures in violation of the Fourth Amendment. After a hearing, the district court denied the motion. Mer-

cier conditionally pled guilty to the charges.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 29–28–06.

## II

[¶ 6] On appeal, Mercier argues the police questioning of him and searches of his backpack and wallet were illegal searches and seizures in violation of the Fourth Amendment.

[¶ 7] This Court applies a deferential standard of review when reviewing a district court decision on a motion to suppress:

The trial court's disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. That standard of review recognizes the importance of the trial court's opportunity to observe the witnesses and assess their credibility, and we "accord great deference to its decision in suppression matters."

*State v. Sabinash*, 1998 ND 32, ¶ 8, 574 N.W.2d 827 (citations omitted).

[¶ 8] "In the context of law enforcement-citizen contacts, a 'Terry' stop, or investigative stop, temporarily restrains an individual's freedom, which results in a Fourth Amendment seizure." *State v. Boyd*, 2002 ND 203, ¶ 13, 654 N.W.2d 392 (citing *State v. Glaesman*, 545 N.W.2d 178, 182 (N.D.1996)). "Within the meaning of the Fourth Amendment, a seizure occurs whenever an officer stops an individual

and restrains his freedom." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "*Terry* created a limited exception to this general rule: certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime." *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). *See also Glaesman*, 545 N.W.2d at 182 (citations omitted) ("An investigative stop must be 'justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.' ").

[¶ 9] In applying the Supreme Court's decision in *Terry*, we have said that in reviewing a *Terry* stop, a court must "(1) determine whether the facts warranted the intrusion of the individual's Fourth Amendment rights, and if so, (2) determine whether the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place." *State v. Sarhegyi*, 492 N.W.2d 284, 286 (N.D.1992). "We use an objective standard: would a reasonable person in the officer's position be justified by some objective evidence in believing the defendant was, or was about to be, engaged in unlawful activity?" *State v. Boyd*, 2002 ND 203, ¶ 14, 654 N.W.2d 392 (citing *State v. Indvik*, 382 N.W.2d 623, 627 (N.D.1986)).

[¶ 10] To determine whether an officer has a reasonable and articulable suspicion, we examine the information known to the officer at the time of the stop. *State v. Robertsdahl*, 512 N.W.2d 427, 428 (N.D.1994) (citing *State v. Miller*, 510 N.W.2d 638 (N.D.1994)). The reasonable-and-articulable-suspicion standard requires that the officer justify the stop "with more than just a vague 'hunch' or other non-objective facts; and ... the articulable facts must produce, by reasonable

inference, a *reasonable* suspicion of unlawful conduct." *Bryl v. Backes*, 477 N.W.2d 809, 811 n. 2 (N.D.1991) (quoting *State v. VandeHoven*, 388 N.W.2d 857, 858 n. 1 (N.D.1986)). In *Geiger v. Backes*, 444 N.W.2d 692, 693 (N.D.1989), this Court noted law enforcement officers do not have to analyze the individual factors of a case in a vacuum. They also are not required "to point to a single factor which, standing alone, signals a potential violation of the law. Rather, officers are to assess the situation as it unfolds and, based upon inferences and deductions drawn from their experience and training, make the determination whether all of the circumstances viewed together create a reasonable suspicion of potential criminal activity." *Id.*

[¶ 11] Here Mercier argues he was seized, for purposes of the Fourth Amendment, prior to the officers' development of reasonable suspicion. He claims he was seized during his initial encounter with Officer McCarthy when she stopped him and asked him for identification. The State argues Mercier was not seized during his initial encounter with Officer McCarthy.

[¶ 12] Not all encounters between law enforcement officers and citizens constitute "seizures" implicating the Fourth Amendment. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478. "It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place...." *State v. Leher*, 2002 ND 171, ¶ 7, 653 N.W.2d 56. A police officer's "approach ... is not a seizure if the officer inquires ... in a conversational manner, does not order the person to do something, and does not demand a response." *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992). A casual encounter between an officer and a citizen can become a seizure if "a reason-

able person would view the officer's actions—if done by another private citizen—as threatening or offensive." *State v. Boyd*, 2002 ND 203, ¶ 7, 654 N.W.2d 392. A seizure occurs only when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Sayler v. North Dakota Dep't of Transp.*, 2007 ND 165, ¶ 18, 740 N.W.2d 94.

[¶ 13] In this case, Officer McCarthy did not need reasonable suspicion simply to approach Mercier and speak with him in a conversational manner. The issue is whether McCarthy escalated the casual encounter into a seizure by ordering Mercier "to do something, by demanding a response, or by threatening [him] with a show of authority or command," and if so, whether she had reasonable suspicion to order him to stop and identify himself. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 9, 639 N.W.2d 478. This Court has held: "If ... an officer directs a citizen to exit a parked vehicle, or otherwise orders a citizen to do something, then the officer has arguably made a stop which, consistent with the Fourth Amendment rights of the citizen, requires the officer to have a reasonable and articulable suspicion that person has been or is violating the law." *State v. Leher*, 2002 ND 171, ¶¶ 7, 10, 653 N.W.2d 56.

[¶ 14] Under N.D.C.C. § 29-29-21 (emphasis added):

A peace officer may stop any person abroad in a public place whom the officer *reasonably suspects* is committing, has committed, or is about to commit:

(1) Any felony.

(2) A misdemeanor relating to the possession of a concealed or dangerous weapon or weapons.

(3) Burglary or unlawful entry.

(4) A violation of any provision relating to possession of marijuana or of narcotic, hallucinogenic, depressant, or stimulant drugs.

The peace officer may demand of such person the person's name, address, and an explanation of the person's actions....

[¶15] Here the initial contact between Officer McCarthy and Mercier occurred when McCarthy approached Mercier for the purpose of having him identify himself because he matched the physical description of a suspicious person recently reported in the area. Under this Court's case law, a simple request made by McCarthy for Mercier to identify himself would not be a seizure for purposes of the Fourth Amendment. A command to do so, however, would be. *See State v. Leher*, 2002 ND 171, ¶¶ 7, 10, 653 N.W.2d 56.

[¶16] Officer McCarthy testified at the suppression hearing regarding her initial encounter with Mercier. She testified she got out of her vehicle to speak with him and asked him for his identification card or some sort of identification. Mercier informed McCarthy that his identification was in his backpack at a house across the street. When asked if she specifically told Mercier whether or not he was free to leave, McCarthy stated that "the only thing I told him was that once I identify him and he came up where he didn't have any kind of warrants, he was going to be cut loose as long as he wasn't involved in this investigation." We believe a reasonable person in Mercier's position would not feel free to leave at that moment until he or she provided identification. Officer McCarthy was ordering Mercier to do something (provide identification), and told Mercier he would be "cut loose" as soon as he did so. This is an order to do something which, consistent with the Fourth Amendment rights of the citizen, "requires the officer to have a reasonable and articulable suspicion that person has been or is violating the law." *Leher*, 2002 ND 171, ¶¶ 7, 10, 653 N.W.2d 56.

[¶17] We conclude Officer McCarthy did have a reasonable suspicion Mercier was, or was about to be, engaged in criminal activity. While normally his action of simply walking on the street would not suggest criminality, when paired with the information known to Officer McCarthy at the time, his actions could give rise to reasonable suspicion. The United States Supreme Court has held that in evaluating the validity of an investigatory stop to determine whether there was reasonable suspicion of criminal activity, courts must consider the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The Court stated:

Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion.... We said in *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam), "there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." *Id.* at 441, 100 S.Ct. at 2754. Indeed, *Terry* itself involved "a series of acts, each of them perhaps innocent" if viewed separately, "but which taken together warranted further investigation."

*Sokolow*, 490 U.S. at 9–10, 109 S.Ct. 1581. The facts in this case, when viewed in their totality through the eyes of a trained law enforcement officer, are sufficient to give rise to a reasonable suspicion of unlawful activity. Mercier matched the description of a suspicious person reported to the police, and he was in the location reported to the police late at night when few other

people would be out. Additionally, when he did comply and provide information regarding his identity to the officers, it was clear he was providing false information, because nothing he provided came back as valid. Therefore, while Mercier was "seized" for purposes of the Fourth Amendment, the seizure was reasonable and valid under the circumstances of this case. The district court did not err in finding the seizure to be valid.[1]

## III

[¶ 18]   Mercier also argues the searches of both his wallet and backpack were unlawful under the Fourth Amendment. The State argues these searches were valid exceptions to the warrant requirement as searches incident to a lawful arrest.

[¶ 19]   Under the Fourth Amendment of the United States Constitution:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The North Dakota Constitution similarly prohibits unreasonable searches and seizures. *See* N.D. Const. art. I, § 8.

[¶ 20]   The United States Supreme Court has held "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically

established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted). A search incident to a lawful arrest is one such exception. *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914). We have held that "[a] search incident to arrest is justified because '[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification ... [i]t is the fact of the lawful arrest which establishes the authority to search.'" *State v. Overby,* 1999 ND 47, ¶ 7, 590 N.W.2d 703 (quoting *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).

[¶ 21]   The United States Supreme Court has also held that so long as probable cause to arrest exists before the search, and the arrest is substantially contemporaneous, a warrantless search preceding arrest is reasonable under the Fourth Amendment. *See Rawlings v. Kentucky,* 448 U.S. 98, 111, 111 n. 6, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest, rather than vice versa," so long as the fruits of the search were "not necessary to support probable cause to arrest.").

[¶ 22]   Under the *Rawlings* search incident to arrest rationale, Officer Bertsch's search of Mercier was reason-

---

1.   The United States Supreme Court in *Utah v. Strieff,* 579 U.S. ——, 136 S.Ct. 2056, 195 L.Ed.2d 400 (2016), held that when an officer lacks reasonable suspicion for a stop, the evidence discovered as a result of the unlawful stop should not be suppressed where the existence of a valid warrant attenuates the con-

nection between the unlawful stop and the discovery of illegality. *Utah v. Strieff,* 579 U.S. ——, 136 S.Ct. 2056, 2060 (2016). Here, because we conclude there was reasonable suspicion for the officer to lawfully stop Mercier, we need not apply *Strieff.*

able if (1) Bertsch had probable cause to arrest Mercier before searching him; and (2) the arrest was substantially contemporaneous to the search. *Id.* Mercier claims the search of his wallet was an illegal patdown search because the officer knew it was a wallet and had no reason to believe it was a dangerous weapon. The Supreme Court has held, "[I]t is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape.... In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Similarly, in *United States v. Robinson,* 414 U.S. 218, 236, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Court noted, "Having in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it."

■■■ [¶ 23] Here the officers searched Mercier when he said there was a knife in his backpack while he was rifling through it to find his identification. This search was subsequent to his being handcuffed, but prior to his being placed formally under arrest. While a warrantless search prior to formal arrest should be the exception to the ordinary practice of a search following arrest, the facts of this case demonstrate that the officers had probable cause to arrest Mercier, even absent any of the evidence obtained during the pre-arrest search. At the time Mercier was placed in handcuffs and his wallet was searched, the officers already knew he was not the person he was claiming to be. Officer Swenson specifically knew who Dwayne Liggins was and knew he was African–American, which Mercier was not. Although his formal arrest occurred after the search, this does not invalidate the search since the officers already had probable cause to arrest him for giving them false information regarding his identity. *See* N.D.C.C. § 12.1–11–03(1). Mercier also was arrested within minutes of being searched. Therefore, the officer's search of Mercier's wallet was valid under the search incident to arrest exception to the warrant requirement.

## IV

[¶ 24] Mercier argues the officers unlawfully searched his backpack. He claims he had a reasonable expectation of privacy in the backpack and the officers were required to obtain a warrant to search it, even after his arrest. He argues the backpack was not within his immediate control and therefore the search of it violated the Fourth Amendment.

[¶ 25] Mercier relies on *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), an automobile-search case, arguing the search of his backpack did not qualify for the search-incident-to-arrest exception to the warrant requirement because, at the time of the search, he was handcuffed in the back of a squad car. Both Mercier and the State agree that a backpack is not an automobile. The State argues a backpack is closer to a purse than to an automobile, and cites to cases such as *State v. Woinarowicz,* 2006 ND 179, 720 N.W.2d 635, holding that a purse may be searched incident to an arrest. Many of the search-incident-to-an-arrest cases relate to automobile searches and residence searches. Fewer relate to searches untethered to either.

[¶ 26] Recently, in *Birchfield v. North Dakota,* 579 U.S. ——, 136 S.Ct. 2160, 2175, 195 L.Ed.2d 560 (2016), the Supreme Court said:

One Fourth Amendment historian has observed that, prior to American inde-

pendence, "[a]nyone arrested could expect that not only his surface clothing but his body, luggage, and saddlebags would be searched and, perhaps, his shoes, socks, and mouth as well." W. Cuddihy, The Fourth Amendment: Origins and Original Meaning: 602–1791, p. 420 (2009).

No historical evidence suggests that the Fourth Amendment altered the permissible bounds of arrestee searches. . . .

[¶ 27] The United States Supreme Court, in a home-search-incident-to-an-arrest case, *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), held that an officer making a lawful custodial arrest may search the arrestee and the area within the arrestee's immediate control. Four years after *Chimel*, the Supreme Court held a search incident to arrest permitted the search of a closed container found on the arrestee during a search incident to arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The *Robinson* Court held:

A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search inci-

dent to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Id.* at 235, 94 S.Ct. 467.

[¶ 28] In *Robinson*, an automobile-search-incident-to-an-arrest case, the Supreme Court identified different types of searches incident to a defendant's arrest: a search of the arrestee himself, and a search of the area within the arrestee's immediate control. *See United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ("This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee.").

[¶ 29] Regarding a search of the arrestee himself, the Supreme Court cited its long line of cases dating back to *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), concluding that a search of the arrestee, including clothing and personal effects, requires "no additional justification" beyond the lawful custodial arrest. *Robinson*, 414 U.S. at 224–226, 235, 94 S.Ct. 467. A search of the arrestee is justified by the need to disarm the individual and to discover evidence, but the search need not be justified by probable cause to search for weapons or evidence. *Id.* It is "not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.* at 235, 94 S.Ct. 467. A search of the arrestee, therefore, requires "no additional

justification" beyond the fact of the lawful custodial arrest. *Id.*

[¶ 30] In *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the Supreme Court addressed this issue as applied to vehicles, and clarified its previous holding in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* had been "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there [was] no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant,* 556 U.S. at 341, 129 S.Ct. 1710. The *Gant* Court held that searches of the area within an arrestee's immediate control, including the interior of a vehicle, must be supported by some additional justification of officer safety or evidence preservation, beyond the fact of the lawful arrest. *Id.* at 339, 129 S.Ct. 1710. *See also id.* at 351, 129 S.Ct. 1710 ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.").

[¶ 31] The Court's decision in *Gant* clarified and limited the "area within the immediate control" type of automobile-search incident to arrest. Nothing in the Court's opinion in *Gant,* however, suggested it was meant to limit or abrogate the *Robinson* holding of a search of the arrestee incident to arrest. The Supreme Court has continued to cite the *Robinson* holding allowing a full search of the arrestee incident to arrest with no additional justification other than the lawful arrest. In *Maryland v. King,* —— U.S. ——, 133 S.Ct. 1958, 1970–71, 186 L.Ed.2d 1 (2013), for example, the Court stated:

Also uncontested is the "right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested." *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914), overruled on other grounds, *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081(1961). "The validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation, and has remained virtually unchallenged." *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Even in that context, the Court has been clear that individual suspicion is not necessary, because "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

[¶ 32] In *King,* the Supreme Court held "the need for law enforcement officers in a safe and accurate way to process and identify the *persons and possessions* they must take into custody" outweighed an arrestee's privacy interest in his own DNA. *King,* 133 S.Ct. at 1970 (emphasis added). As explained further in *United States v. Matthews,* 532 Fed.Appx. 211, 223 (3d Cir.2013):

[C]ertainly if the government's interest in correctly identifying a person taken into custody outweighs that person's expectation of privacy in his or her own DNA, the government's interest in ensuring officer safety while transporting an arrested person's luggage outweighs that person's expectation of privacy in such luggage (which would be subject to a search as soon as the person arrived at the cell block, in any event).

[¶ 33] In analyzing the search of an arrestee, therefore, we follow the Su-

preme Court's rationale that "a search may be made of the person of the arrestee by virtue of the lawful arrest." *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Because the Supreme Court's decision in *Gant* does not restrict the lawful search of an arrestee, there is no requirement that the arrestee be within reaching distance or have the item within his immediate control once it is seized as part of the lawful arrest.

[¶ 34] To determine whether a particular personal item should be considered part of the arrestee, including his personal effects, rather than it simply existing in the arrestee's surrounding area, courts have said it "turns on whether the arrestee had 'actual and exclusive possession at or immediately preceding the time of arrest.'" *State v. Brock*, 184 Wash.2d 148, ¶ 12, 355 P.3d 1118 (2015) (quoting *State v. Byrd*, 178 Wash.2d 611, 623, 310 P.3d 793 (2013)). *See also People v. Cregan*, 2014 IL 113600, ¶ 50, 381 Ill.Dec. 593, 10 N.E.3d 1196 ("The true measure of whether an object, whether it is a cigarette pack or a suitcase, is 'immediately associated' with an arrestee is whether he is in actual physical possession of the object at the time of his arrest.").

[¶ 35] In *State v. Brock*, 184 Wash.2d 148, ¶ 12, 355 P.3d 1118 (2015), the Supreme Court of Washington addressed this issue as well as the scope of the language "immediately preceding arrest." In that case, with very similar facts to ours, the defendant, Antoine Brock, was carrying his backpack when an officer approached him at a public park. During the course of his investigation, the officer eventually took the backpack from Brock for safety purposes and placed it in the passenger seat of his patrol vehicle. *Id.* at ¶¶ 3–4. After discovering Brock was providing false information to him regarding his identity, the officer placed Brock under

arrest and searched the backpack. *Id.* at ¶ 5. In the backpack, the officer found Brock's wallet, which contained various drugs as well as an identification card. *Id.* at ¶ 6. After running the name on the card through dispatch, the officer discovered Brock had an active felony warrant for his arrest. *Id.* at ¶ 7. The officer then emptied the contents of the backpack before taking Brock into custody, discovering several items indicative of identity theft and forgery, as well as more drugs. *Id.*

[¶ 36] At trial, Brock conditionally plead guilty to 10 counts of identity theft, 3 counts of forgery, and violation of the Uniform Controlled Substances Act, reserving the right to appeal the trial court's suppression ruling. *Id.* at ¶ 8. On appeal, Brock argued the officer's search of his backpack was not a valid search of "his person," because he did not have actual exclusive possession of the backpack immediately preceding arrest, since the officer had placed the backpack in his patrol car and Brock was not holding it when he was arrested. *State v. Brock*, 182 Wash. App. 680, ¶ 17, 330 P.3d 236. The Court of Appeals of Washington agreed and reversed Brock's conviction. *Id.* at 689, 330 P.3d 236. On appeal, the Supreme Court of Washington reversed the decision of the Court of Appeals and held the backpack was part of "the defendant's person" at the time of arrest, despite the fact he was not still wearing the backpack at the time of the formal arrest. *State v. Brock*, 184 Wash.2d 148, 355 P.3d 1118 (2015).

[¶ 37] In reaching this result, the court noted that the underlying justification for an item being considered "part of the person" is that "there are presumptive safety and evidence preservation concerns associated with police taking custody of those personal items immediately associated with the arrestee, which will necessarily travel with the arrestee to jail." *Brock*,

184 Wash.2d 148 at ¶ 14, 355 P.3d 1118. The court explained:

> When the personal item is taken into custody as part of the arrestee's person, the arrestee's ability to reach the item during the arrest and search becomes irrelevant.
>
> Rather, the safety and evidence preservation exigencies that justify this "time of arrest" distinction stem from the safety concerns associated with the officer having to secure those articles of clothing, purses, backpacks, and even luggage, that will travel with the arrestee into custody. Because those items are part of the person, we recognize the practical reality that the officer seizes those items during the arrest. From that custodial authority flows the officer's authority to search for weapons, contraband, and destructible evidence.

*Id.* at ¶¶ 16–17, 355 P.3d 1118 (2015). The court then went on to conclude that the lapse of time between when Brock had possession of his backpack to when he was arrested and the backpack searched was not the deciding factor as to whether he had the backpack in his actual possession at the time of, or immediately preceding, his arrest. *Id.* at ¶ 22. The court explained this by stating:

> The Court of Appeals' analysis misapprehends the purpose of the time of arrest rule. Although we must draw these exceptions to the warrant requirement narrowly, we do not draw them arbitrarily; the exception must track its underlying justification.... [W]e draw the line of 'immediately preceding' with that focus. The proper inquiry is whether possession so immediately precedes arrest that the item is still functionally a part of the arrestee's person. Put simply, personal items that will go to jail with the arrestee are considered in the arrestee's "possession" and are

within the scope of the officer's authority to search.

*Id.* at ¶ 22. The court went on to hold:

> Under these circumstances, the lapse of time had little practical effect on Brock's relationship to his backpack.... Once the arrest process had begun, the passage of time prior to the arrest did not render it any less a part of Brock's arrested person.
>
> We hold that when the officer removes the item from the arrestee's person during a lawful *Terry* stop and the *Terry* stop ripens into a lawful arrest, the passage of time does not negate the authority of law justifying the search incident to arrest.

*Id.* at ¶¶ 23–24. We agree with this reasoning and the conclusion reached by the Supreme Court of Washington. We therefore conclude that where the object searched is immediately associated with the arrestee, such that it is considered a part "of the person of the arrestee" that will be taken into custody with him, *Robinson* applies and no additional justification beyond the lawful arrest is necessary to justify the search.

[¶ 38] This is consistent with the decisions of several other courts. *See People v. Marshall*, 2012 CO 72, ¶ 16, 289 P.3d 27 ("[E]xigencies relied upon by the majority in *Gant* are not implicated by the search of a person, and articles on or near that person, after a lawful arrest."); *United States v. Matthews*, 532 Fed.Appx. 211 (3d Cir.2013) (police may search the luggage a person has in his possession at the time of a valid, public arrest, before transporting it to the police station); *United States v. Gordon*, 895 F.Supp.2d 1011 (D.Haw.2012) (search of the defendant's duffel bag, which he was carrying over his shoulder at the time of his arrest, was a proper search even though he was handcuffed and in custody at the time of the search). We

have similarly held "[a]n arrestee's purse is generally considered an object immediately associated with a person or an extension of the person, similar to a search of the arrestee's pocket or clothing." *State v. Woinarowicz*, 2006 ND 179, ¶ 32, 720 N.W.2d 635. Although *Woinarowicz* involved a purse and not a backpack, they are very similar—both objects are used to carry personal items and are generally considered an extension of the person.

[¶ 39] The United States Supreme Court also seemed to support this conclusion when it suggested, without directly holding, that inspecting certain physical items "carried by the arrestee" may be reasonable. *See Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 2488–89, 189 L.Ed.2d 430 (2014) ("Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse. A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but any extension of that reasoning to digital data has to rest on its own bottom."). The *Riley* Court also noted that *Robinson* is the only decision where the Court has had occasion to apply *Chimel* to a search of the contents of an item found on an arrestee's person, but lower courts have approved such searches. *Id.* at 2488 ("Lower courts applying *Robinson* and *Chimel*, however, have approved searches *of a variety of personal items carried by an arrestee.*" (emphasis added)). The court also noted in *Riley* that it had upheld the search of a zipper bag carried by an arrestee in *Draper v. U.S.*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), but in that case only analyzed the validity of the arrest itself. *See Riley v. California*, 134 S.Ct. at 2488.

[¶ 40] Most recently we have the Supreme Court's statement in *Birchfield v. North Dakota*, quoted above at ¶ 26.

[¶ 41] Our decisions post-*Gant* involving the scope of a warrantless search incident to an arrest generally have involved the search of an automobile, similar to *Belton* and *Gant*, or a home, similar to *Chimel.* In the present case, we are faced with the warrantless search-incident-to-arrest of a backpack, that backpack not being in a vehicle or in a home but in the defendant's actual possession immediately preceding his arrest. We conclude that under the facts and circumstances of this case, the search of Mercier's backpack incident to his arrest was reasonable.

[¶ 42] At the time Mercier's backpack was searched, he had been placed in the back of a squad car. Mercier had the backpack in his immediate possession prior to being restrained because the officers were allowing him to search through it to obtain his identification. Once he informed the officers that there was a knife inside the backpack, they handcuffed him for safety purposes and searched him. Shortly thereafter, the officers arrested him, placed him in the back of a squad car, and searched his backpack incident to his arrest. Having no other place to store it, Mercier would have had to bring the backpack along with him into custody. The fact that the backpack sat on the ground for a number of minutes after Mercier was searching through it and before he was formally arrested had little effect on his relationship to the backpack. It was still an item in Mercier's possession immediately preceding his arrest and would have to go with him to jail when he was brought into custody. It would be illogical to require police officers to leave the backpack on the public street without checking it, posing a threat to the public and the possibility of its being stolen.

Similarly, it would be illogical for the officers to take it with them to the correctional center or police station without checking it, posing a threat to themselves, the arrestee, and the public. The officers would have been entitled—and expected—to do an inventory search on the backpack upon its arrival at the police station or correctional center. *See Illinois v. Lafayette,* 462 U.S. 640, 648, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) ("[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."). Such an inventory search would have uncovered the contraband found in Mercier's backpack.

[¶ 43] Similar to the facts in *Brock,* "Once the arrest process had begun, the passage of time prior to the arrest did not render it any less a part of [the defendant's] arrested person." *State v. Brock,* 184 Wash.2d 148, ¶ 23, 355 P.3d 1118 (2015). As the *Matthews* court articulated in its holding:

> [W]hen a valid arrest has been made in a public place, which requires that the arrested person be transported from the scene, police may search any luggage that the person has in his possession at the time of the arrest, and which must accompany him to the police station, prior to transporting it. Such a search is "reasonable" in a twenty-first century where threats to the safety of police officers include backpacks that conceal bombs, capable of extreme devastation, which can be triggered remotely.

*United States v. Matthews,* 532 Fed.Appx. 211, 225–26 (3d Cir.2013).

[¶ 44] Because Mercier had the backpack in his actual possession immediately preceding his lawful arrest, we conclude a search thereof was reasonable.

The district court properly upheld the search of the backpack incident to Mercier's arrest. In reaching this conclusion, we acknowledge "the central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant,* 556 U.S. 332, 345, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). We note, therefore, that our holding is narrowly tailored and applies only when an individual has been validly arrested and the property or items searched as part of the arrestee incident to the arrest invariably must be transported along with him or her to the jail or the police station.

### V

[¶ 45] Because the district court properly denied the motion to suppress in this case, we affirm the criminal judgment.

[¶ 46] GERALD W. VANDE WALLE, C.J., concurs.

LISA FAIR McEVERS, J., concurs in the result.

KAPSNER, Justice, dissenting.

[¶ 47] I respectfully dissent.

### I

[¶ 48] Mercier argues law enforcement's warrantless search of his wallet and backpack violate the Fourth Amendment. The State contends the searches constitute an exception to the Fourth Amendment's warrant requirement because they were incident to Mercier's arrest. The search of Mercier's wallet was constitutional, but the search of his backpack was not.

[¶ 49] The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers and ef-

fects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

North Dakota Const. art. I, § 8 also prohibits unreasonable searches and seizures. The United States Supreme Court has held "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A search incident to a lawful arrest is one such exception. *Weeks v. United States*, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

[¶ 50] Incident to a lawful arrest, officers may search: 1) the arrestee's person and 2) areas within an arrestee's immediate control. *Arizona v. Gant*, 556 U.S. 332, 339, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). The justification for allowing a search of the arrestee's person stems from the lawful nature of the arrest itself. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The justification for allowing warrantless searches of areas and items within the arrestee's immediate control stems from law enforcement's need to remove weapons that the arrestee might use in order to resist arrest or effect escape and to prevent concealment or destruction of evidence. *Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 2483, 189 L.Ed.2d 430 (2014). *See also Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule

does not apply." *Gant*, 556 U.S. at 339, 129 S.Ct. 1710.

[¶ 51] A number of courts have explained the distinction between searches of the arrestee's *person* and searches of areas within the arrestee's *immediate control.*

In *Robinson,* the Supreme Court distinguished between two types of search incident to arrest: the search of the person arrested and the search of the area within his control. *Robinson,* 414 U.S. at 224, 94 S.Ct. 467. These searches serve different purposes and are justified by different concerns. A search of the person incident to his arrest is based on the need to disarm the individual and to discover evidence. However, the search need not be justified by probable cause to search for weapons or evidence; the search of the person requires no additional justification beyond the fact of his lawful custodial arrest, which is itself justified by probable cause. *Id.* at 235, 94 S.Ct. 467.

> "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.*

The search of the area of the arrest, on the other hand, must be justified by the possibility that the arrestee might gain possession of a weapon or destroy evidence. The scope of an area search is, therefore, limited to the area within

the arrestee's immediate control. *Gant*, 556 U.S. at 335, 129 S.Ct. 1710.

*People v. Cregan*, 381 Ill.Dec. 593, 10 N.E.3d 1196, 1201–02 (2014). The Supreme Court of Washington has similarly explained:

There are two discrete types of searches incident to arrest: (1) a search of the arrestee's person (including those personal effects immediately associated with his or her person—such as purses, backpacks, or even luggage) and (2) a search of the area within the arrestee's immediate control. A valid search of the latter requires justification grounded in either officer safety or evidence preservation—there must be some articulable concern that the arrestee can access the item in order to draw a weapon or destroy evidence. *Byrd*, 178 Wash.2d at 617, 310 P.3d 793 (citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). The former search does not; in analyzing the search of an arrestee, we utilize the United States Supreme Court's rationale from the Fourth Amendment to the United States Constitution that " 'a search may be made of the *person* of the arrestee by virtue of the lawful arrest.' " *Byrd*, 178 Wash.2d at 617, 310 P.3d 793 (quoting *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). In such cases, we presume that safety and evidence justifications exist when taking those personal items into custody as part of the arrestee's person.

The distinction as to whether a particular personal item constitutes part of the arrestee's person, as opposed to just part of the surrounding area, turns on whether the arrestee had "actual and exclusive possession at or immediately preceding the time of arrest." *Byrd*, 178 Wash.2d at 623, 310 P.3d 793.

*State v. Brock*, 184 Wash.2d 148, 355 P.3d 1118, 1121 (2015) (emphasis in original).

[¶ 52] The United States Supreme Court has explained its evolving rationale for creating these distinctions:

*Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), laid the groundwork for most of the existing search incident to arrest doctrine. Police officers in that case arrested Chimel inside his home and proceeded to search his entire three-bedroom house, including the attic and garage. In particular rooms, they also looked through the contents of drawers. *Id.* at 753–754, 89 S.Ct. 2034.

The Court crafted the following rule for assessing the reasonableness of a search incident to arrest:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.... There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 762–763, 89 S.Ct. 2034.

The extensive warrantless search of Chimel's home did not fit within this exception, because it was not needed to protect officer safety or to preserve evidence. *Id.* at 763, 768, 89 S.Ct. 2034.

Four years later, in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Court applied the *Chimel* analysis in the context of a search of the arrestee's person. A police officer had arrested Robinson for driving with a revoked license. The officer conducted a patdown search and felt an object that he could not identify in Robinson's coat pocket. He removed the object, which turned out to be a crumpled cigarette package, and opened it. Inside were 14 capsules of heroin. *Id.* at 220, 223, 94 S.Ct. 467.

The Court of Appeals concluded that the search was unreasonable because Robinson was unlikely to have evidence of the crime of arrest on his person, and because it believed that extracting the cigarette package and opening it could not be justified as part of a protective search for weapons. This Court reversed, rejecting the notion that "case-by-case adjudication" was required to determine "whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." *Id.* at 235, 94 S.Ct. 467. As the Court explained, "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Ibid.* Instead, a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Ibid.*

The Court thus concluded that the search of Robinson was reasonable even though there was no concern about the loss of evidence, and the arresting officer had no specific concern that Robinson might be armed. *Id.* at 236, 94 S.Ct. 467. In doing so, the Court did not draw a line between a search of Robinson's person and a further examination of the cigarette pack found during that search. It merely noted that, "[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it." *Ibid.* A few years later, the Court clarified that this exception was limited to "personal property ... immediately associated with the person of the arrestee." *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (200–pound, locked footlocker could not be searched incident to arrest), abrogated on other grounds by *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

The search incident to arrest trilogy concludes with *Gant*, which analyzed searches of an arrestee's vehicle. *Gant*, like *Robinson*, recognized that the *Chimel* concerns for officer safety and evidence preservation underlie the search incident to arrest exception. *See* 556 U.S. at 338, 129 S.Ct. 1710. As a result, the Court concluded that *Chimel* could authorize police to search a vehicle "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. at 343, 129 S.Ct. 1710. *Gant* added, however, an independent exception for a warrantless search of a vehicle's passenger compartment "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Ibid.* (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring in judgment)). That exception stems not from

*Chimel*, the Court explained, but from "circumstances unique to the vehicle context." 556 U.S. at 343, 129 S.Ct. 1710.

*Riley v. California,* —— U.S. ——, 134 S.Ct. 2473, 2483–84, 189 L.Ed.2d 430 (2014). *See also Birchfield v. North Dakota,* 579 U.S. ——, 136 S.Ct. 2160, 2175–76, 195 L.Ed.2d 560 (2016) (discussing the development of search-incident-to-arrest case law).

[¶ 53] In this case, after law enforcement brought Mercier's backpack to the scene, they instructed him to slowly retrieve his identification from the backpack while they shined flashlights inside and observed. While Mercier was reaching into the backpack, officers asked whether it contained any weapons. Mercier then told them the bag contained a knife. Upon hearing this, officers placed Mercier in handcuffs, removed the knife from the bag, and conducted a pat-down search of Mercier's body on which they found his wallet. The search revealed marijuana inside of Mercier's wallet as well as his and Dewayne Liggins' identification cards. Officers then informed Mercier he was under arrest and placed him in a squad car. After doing so, they searched Mercier's backpack and found drugs and drug paraphernalia.

### A

[¶ 54] The search of Mercier's wallet was a permissible search incident to arrest because it was on his person when the officers searched and arrested him. A search incident to arrest is permissible even when the search precedes the arrest so long as the two are substantially contemporaneous and the search does not yield the evidence necessary to provide probable cause for the arrest. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 111 n. 6, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) ("Where

the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa[,]" when the fruits of the search were "not necessary to support probable cause to arrest petitioner."). *See also State v. Overby,* 1999 ND 47, ¶¶ 8–9, 590 N.W.2d 703. At the point his wallet was seized, Mercier had identified himself as a man the officers knew he was not, thus giving false information to a police officer. They had probable cause to arrest him independent of the evidence they obtained from the search of his wallet. The wallet was on his person when he was arrested. The search of Mercier's wallet was a permissible search incident to a lawful arrest.

### B

[¶ 55] The search of Mercier's backpack, however, was unconstitutional. The State argues the backpack was subject to a search incident to arrest because it was within Mercier's immediate control prior to the arrest. As noted above, in *Robinson,* the United States Supreme Court held police may, incident to a lawful arrest, search a container found on the arrestee's *person.* 414 U.S. at 236, 94 S.Ct. 467 ("Having in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it."). In a later case, *United States v. Chadwick,* 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), abrogated on other grounds by *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Court clarified this rule and held items "not immediately associated with the person of the arrestee" may not be searched incident to arrest unless there is a danger the arrestee can reach the item to access a weapon or destroy evidence:

[W]arrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

[¶ 56] Mercier's backpack was not on his person and it was not immediately associated with Mercier when Officer McCarthy approached him. An officer left the scene after speaking with Mercier and took the backpack from an individual at a neighboring house. It is not clear whether the backpack was ever in Mercier's control once it was brought to the scene. Nothing in the record indicates whether officers handed him the bag or maintained control of it while they allowed him to search for his identification. The only testimony on the issue indicates officers instructed Mercier to slowly remove his identification from the bag while the officers shined their flashlights into it. Shortly after he began searching, Mercier told officers the bag contained a knife. Officers then placed him into handcuffs, patted him down, and discovered he had given them false identification and had a bag of marijuana in his pocket:

Q. How did Mr. Mercier's backpack—and at this time the person you knew as Mr. Liggins, how did his backpack get to the scene?

A. He said it was over at his friend's across the road, so Officer Bratsch went to retrieve it. He gave a description of the backpack and then he went to retrieve the backpack and returned it.

Q. And once he came back with the backpack, what did the person—this subject say about the bag?

A. I asked him whether this was his backpack and he said it was.

Q. What did he say when you asked if anything illegal was in the bag?

A. We initially asked to search the bag and he said no and—because his identification card that he claimed was in there was in there, we told him to go through it but just in a slow manner so that—we didn't want him pulling out any kind of weapon or anything like that. So we shined our flashlights inside the backpack while he looked.

Q. And did he indicate there were any weapons in the bag?

A. Yes. We asked if there were weapons in there and he said yes, there was a knife.

Q. And what did officers then do?

A. At that point he said he would retrieve it and we said no, we'll retrieve the knife and the knife only, and placed him in handcuffs for safety purposes.

Officers then placed Mercier into the back of a squad car and searched his bag.

[¶ 57] Under the *Robinson* analysis, a search of the person and items immediately associated with the person is constitutionally permissible as an incident of the arrest. But a police officer cannot *create* the immediate association between the item to be searched and the defendant that allows the item to be searched under the *Robinson* analysis. In cases following *Robinson,* and in every case cited in the majority opinion for search of the person incident to arrest, the item searched was immediately associated with the person when the person was approached by the

police; the police did not create that immediate association. *See Birchfield v. North Dakota*, 579 U.S. ——, 136 S.Ct. 2160, 195 L.Ed.2d 560 (blood alcohol content inherently a part of the person arrested); *Robinson*, 414 U.S. at 223, 94 S.Ct. 467 (crumpled cigarette package found on defendant's person); *State v. Woinarowicz*, 2006 ND 179, ¶ 33, 720 N.W.2d 635 (defendant was clutching her purse when she was placed under arrest); *State v. Brock*, 184 Wash.2d 148, ¶ 1, 355 P.3d 1118 (arrestee was wearing the backpack at the time he was stopped by the police); *State v. Byrd*, 178 Wash.2d 611, ¶ 1, 310 P.3d 793 (defendant's purse in her lap at time of arrest); *People v. Cregan*, 2014 IL 113600, ¶¶ 5–7, 381 Ill.Dec. 593, 10 N.E.3d 1196 (defendant was in possession of both bags when approached by officers); *United States v. Gordon*, 895 F.Supp.2d 1011, 1014–15 (D.Haw.2012) (defendant was carrying bag and wallet at time of arrest); *People v. Marshall*, 2012 CO 72, ¶¶ 3, 17, 289 P.3d 27 (defendant stepped out of the car carrying a backpack and backpack at his feet when defendant was arrested).

[¶ 58] This Court has previously had to deal with a similar issue. Prior to its limitation by *Gant*, the United States Supreme Court in *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), held "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." In *Wyoming v. Houghton*, 526 U.S. 295, 302, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), the United States Supreme Court extended the *Belton* "bright line" ability to search the passenger compartment of a car upon arrest to the ability to search containers belonging to non-arrested occupants of the vehicle. Recognizing that holding, this Court in *State v. Tognotti*, 2003 ND 99, ¶ 14, 663 N.W.2d

642 (limited by *Arizona v. Gant*, 556 U.S. 332, 339, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)), held: "an arresting officer's search of a purse belonging to a nonarrested occupant which is voluntarily left in the vehicle is a valid search incident to the arrest of a passenger in the vehicle."

[¶ 59] In so holding, this Court in *Tognotti* had to consider whether a police officer could *create* the right to search a passenger's property by ordering the passenger to leave the property in the car. This Court reviewed the caselaw from other jurisdictions that held "the police cannot create a right to search a container by placing it within the passenger compartment of a car or by ordering someone else to place it there for them." *Tognotti*, 2003 ND 99, ¶ 19, 663 N.W.2d 642 (quoting *State v. Holland*, 135 Idaho 159, 15 P.3d 1167, 1171 (2000)). *Accord: State v. Boyd*, 275 Kan. 271, 64 P.3d 419, 427 (2003); *State v. Newsom*, 132 Idaho 698, 979 P.2d 100, 102 (1998); *State v. Seitz*, 86 Wash. App. 865, 941 P.2d 5, 8 (1997). *But see State v. Steele*, 613 N.W.2d 825, 830 (S.D. 2000).

[¶ 60] In *Tognotti*, holding the police officer could not create a right to search, this Court stated:

A purse, like a billfold, is such a personal item that it logically carries for its owner a heightened expectation of privacy, much like the clothing the person is wearing. We are, therefore, persuaded by the foregoing court decisions that the Fourth Amendment is violated when an officer directs that a purse be left in the vehicle and then proceeds to search the purse incident to the arrest of another passenger in the vehicle.

2003 ND 99, ¶ 20, 663 N.W.2d 642. Although the expansive right to search a vehicle accepted in *Tognotti* under *Belton* and *Houghton* has been restricted under

*Gant,* the limitation on the ability of an officer to create a right to search has not.

[¶ 61] Our jurisprudence makes it clear the officers had no authority, without a warrant, to transport the backpack to the location where Mercier was being questioned. *State v. Ressler,* 2005 ND 140, 701 N.W.2d 915; *State v. Nickel,* 2013 ND 155, 836 N.W.2d 405.

[¶ 62] "[A] seizure deprives the individual of dominion over his or her person or property." *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "A seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *Nickel,* 2013 ND 155, ¶ 20, 836 N.W.2d 405. Absent probable cause to believe the personal property seized is illegal itself or contains contraband, law enforcement may not transport an individual's property from the initial place of seizure; such action interferes with the individual's private possessory interest in the property and constitutes an unreasonable seizure. *Ressler,* 2005 ND 140, ¶ 19, 701 N.W.2d 915 ("A *Terry* stop of a package is distinguishable from a full-fledged seizure supported by probable cause, and we hold reasonable suspicion was an inadequate basis upon which to transport Ressler's package to the law enforcement center.").

> Here, Officer Eisenmann had reasonable suspicion to suspect Ressler's package, and this level of suspicion would have justified a decision to detain the package at We Ship pending further investigation. By transporting the package, however, police executed the seizure in a manner we believe is contrary to the constitutional prohibition against unreasonable seizures.
>
> A seizure of a package based on reasonable suspicion affords government officials less command, dominion, or control over the package than they would possess if executing a full-fledged seizure based on probable cause or a warrant. A contrary conclusion would distend the rationale for a *Terry* stop to a point where it envelops a seizure based on probable cause or a seizure supported by a warrant. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Police could not seize Ressler's package to a greater extent than by placing it in their exclusive control, removing it from the location where it was submitted for shipping, and transporting it to a law enforcement center. This full-fledged seizure required either probable cause supported by an exception to the warrant requirement or a warrant to be valid. *[United States v.] Place,* 462 U.S. [696,] 701–02, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *see Garmon v. Foust,* 741 F.2d 1069, 1073–74 [ (8th Cir. 1984) ] (finding exigent circumstances existed where a shipped parcel could be lost or mistakenly delivered). A *Terry* stop of a package is distinguishable from a full-fledged seizure supported by probable cause, and we hold reasonable suspicion was an inadequate basis upon which to transport Ressler's package to the law enforcement center.

*Ressler,* at ¶¶ 18–19. *See also Nickel,* 2013 ND 155, ¶¶ 23–24, 31–33, 836 N.W.2d 405 (warrantless transportation of individual's package to law enforcement center after officers observed plant material in vials held unconstitutional); *State v. Heier,* 2016 ND 158, ¶¶ 18–19 (holding Heier's privacy interest in backpack interfered with by private individual, but Fourth Amendment does not apply to search or seizure by private person).

[¶ 63] In Mercier's case, like in *Ressler* and *Nickel,* officers took Mercier's personal property from a third party. They exercised dominion over his property by

moving it from the place he had left it. Their act of exercising control over his property interfered with his possessory interest. This constitutes a seizure. Officers then transported his property from the place it was seized to conduct further investigation. If the officers believed they had reasonable suspicion to seize the backpack as part of an investigation, *Ressler* makes clear it was necessary to get a warrant to transport it from where it was located. The warrantless seizure and transportation of Mercier's backpack was unreasonable and in violation of the Fourth Amendment.

[¶ 64] Even if the backpack was, in fact, in Mercier's control at some point, the justifications for a search incident to arrest of items within the arrestee's immediate control are still absent. At the time the backpack was searched, Mercier was handcuffed and secured in the back of a squad car, and the knife had already been removed. The search did not ensure officer safety. Nor did the search prevent the destruction of evidence; the bag was in the officers' custody after Mercier was handcuffed and placed in the squad car. "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Gant*, 556 U.S. at 339, 129 S.Ct. 1710. *See also Chadwick*, 433 U.S. at 15, 97 S.Ct. 2476 ("Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest."); *United States v. Matthews*, 532 Fed.Appx. 211, 218 (3d Cir.2013) ("However, '[o]nce law enforcement officers have [exclusive control over] luggage or other personal property not immediately associated with the person of the arrestee . . ., and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.' ") ("Here, there was no reasonable possibility that Matthews could have accessed the backpack at the time Officer Pomeroy executed the search, as he was handcuffed in the back of a locked police car. Thus, the District Court was correct in concluding that the search could not be justified under the search incident to arrest exception.") (alteration in original).

[¶ 65] "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley*, 134 S.Ct. at 2482. This case presents a situation where officers took an individual's personal property from off scene, brought the property to the individual while he was detained, ordered the individual to retrieve an item from inside the property while they observed what was inside, asked the individual what was inside, physically restrained the individual based on his response to their question, placed the individual into a locked squad car, and then conducted a warrantless search of the personal property. It is unreasonable to permit law enforcement to act in this manner—to procure a citizen's personal property from another location, bring it to the scene of the arrest, place it near the person, and then invoke the search-incident-to-arrest exception to sidestep the Fourth Amendment's warrant requirement.

II

[¶ 66] Because the district court improperly denied the motion to suppress the evidence found in the backpack, I would

reverse the criminal judgment and remand for further proceedings.

[¶ 67]  DANIEL J. CROTHERS, J., concurs.