

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0722-19

### BRADEN DANIEL PRICE, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

YEARY, J., announced the judgment of the Court and delivered an opinion in which KEASLER, KEEL, and SLAUGHTER, JJ., joined. RICHARDSON, J., concurred in the result. KELLER, P.J., filed a dissenting opinion. NEWELL, J., filed a dissenting opinion in which HERVEY, J., joined. WALKER, J., filed a dissenting opinion.

### O P I N I O N

Police approached Appellant at the airport in San Antonio, detained him on suspicion of trafficking in drugs, and handcuffed him behind his back. They then transported both him and his rolling suitcases to a "secure office" inside the airport. After reading Appellant his rights, police searched the suitcases and discovered marijuana.

Appellant argued on appeal that the trial court should have granted his motion to suppress the marijuana because the officers' search of the suitcases was impermissible under the Fourth Amendment. The court of appeals reversed, holding that the warrantless search was not justified

as a search incident to arrest. *Price v. State*, No. 14-18-00628-CR, 2019 WL 2013849, (Tex. App.—San Antonio del. May 8, 2019) (mem. op., not designated for publication). We granted the State's petition for discretionary review to examine its claim that the court of appeals erred when it concluded that the search was not a valid search incident to arrest because, as a categorical matter, luggage is never "property immediately associated with the arrestee." We will reverse.

## FACTS AND PROCEDURAL POSTURE

Appellant pled guilty to the offense of possession of marijuana in an amount greater than fifty but less than two hundred pounds, a second-degree felony. TEX. HEALTH & SAFETY CODE § 481.121(a) & (b)(5). The trial court assessed a sentence of ten years in the penitentiary and a fine of $1,500, but placed Appellant on community supervision for a period of ten years. The trial court then certified Appellant's right to appeal the pretrial denial of his motion to suppress.

The facts as developed at the hearing on the motion to suppress are undisputed. Only one witness testified, Detective Carl Bishop of the San Antonio Police Department. Bishop received a tip from an Austin police officer that a reliable informant had indicated Appellant would be flying into the San Antonio airport on January 29, 2017, with a quantity of marijuana he had purchased from out of state. Bishop verified that Appellant was on an in-coming flight, and a drug dog alerted to the presence of contraband in suitcases bearing labels with Appellant's name. Bishop and at least two other detectives then watched as Appellant, whom Bishop recognized from a photograph, retrieved the suitcases from the baggage claim area and rolled them out to the curb. There, the detectives detained Appellant, seized the suitcases from him, handcuffed him behind his back, and transported him along with the suitcases to a secure office, where Bishop read him his *Miranda* rights. By this time, Bishop acknowledged, Appellant was under arrest. One of the other detectives then opened the suitcases, revealing a large quantity of marijuana in vacuum-sealed bags. The events from the time the police detained Appellant at the curb to the search of the suitcases in the

secure office were captured on video by the body cam of a uniformed officer at the scene, and the video was admitted into evidence and played at the motion-to-suppress hearing.

In reversing the trial court's denial of Appellant's motion to suppress, the court of appeals reasoned:

> [O]ur analysis in this case turns on whether the rolling suitcases were "immediately associated" with [Appellant] at the time of his arrest. If they were not, the videotape of the events that transpired between the time [Appellant] was handcuffed and the searching of his suitcases established that the suitcases were reduced to the officers' "exclusive control, and there [was] no longer any danger that [Appellant] might gain access to the [suitcases] to seize a weapon or destroy evidence." *Chadwick*, 433 U.S. at 15. Accordingly, unless the suitcases were "immediately associated" with [Appellant], their search would not be justified under the search-incident-to-arrest exception to the warrant requirement.

*Price*, 2019 WL 2013849 at *2. Concluding—seemingly categorically—that suitcases are not among the types of receptacle that have been held to be "immediately associated with" the arrestee, the court of appeals held that the warrantless search of the suitcases was not authorized as a search incident to Appellant's arrest. *Id*.

The court of appeals next addressed whether the trial court's denial of Appellant's motion to suppress might have been correct for a different reason. *Id*. (citing this Court's opinion in *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018), for the proposition that an appellate court should uphold a trial court's ruling on a motion to suppress if that court's "decision is correct under any applicable theory of law"). The court noted that, in *Lalande v. State*, 676 S.W.2d 115, 118 (Tex. Crim. App. 1984), this Court held that, once it becomes "unequivocally clear" that an arrestee would be taken to the police station, where the right of the police to conduct an inventory search of his property would accrue, a search of the property would be permissible; and that, moreover, such a search would not be "limited to inspections carried out within the station itself." *Price*, 2019 WL 2013849 at *2. The court of appeals observed that, because it was clear in this case that Appellant's suitcases would accompany him into custody, "under the reasoning of *Lalande*, the search [in the secure office at the airport] would be permissible." *Id*.

Even so, the court of appeals declined to apply *Lalande* to uphold the search of the suitcases because it perceived a conflict with this Court's later opinion in *State v. Daugherty*, 931 S.W.2d 268 (Tex. Crim. App. 1996). *Price*, 2019 WL 2013849 at *2. In *Daugherty*, this Court held that Article 38.23 of the Texas Code of Criminal Procedure, our statutory exclusionary rule, does not embrace the inevitable discovery doctrine. *Id*. at 273; TEX. CODE CRIM. PROC. art. 38.23. The court of appeals perceived *Lalande* to involve an application of inevitable discovery, in contradiction of the Court's later rejection of that doctrine in *Daugherty*. *Price*, 2019 WL 2013849 at *2.

In its petition for discretionary review, the State raises two grounds. First, the State argues that the court of appeals misapplied *Chadwick* by categorically excluding luggage from the universe of receptacles that may be searched incident to arrest. Second, it argues that the court of appeals erred to believe that *Lalande* and *Daugherty* are irreconcilable. In the State's view, the holding in *Lalande* renders the search in the secure office constitutionally permissible in the first instance, and *Lalande* does not stand for the proposition that the search is justified because of the inevitable discovery doctrine. In the State's view, therefore, the two cases are not in tension. We granted review of both grounds.

**ANALYSIS**

**Searches Incident to Arrest**

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 382 (2014). Under the United States Supreme Court's Fourth Amendment jurisprudence, warrantless searches for evidence of criminal wrongdoing are generally regarded as unreasonable, subject to notable exceptions including, as relevant here, searches incident to arrest. *Id*. As the Supreme Court observed in *United States v. Robinson*, 414 U.S. 218 (1973), the search-incident-to-arrest exception

> has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee.

*Id*. at 224. The first type of search identified by *Robinson* has been deemed "unqualified": that is to say, the dual justifications that underlie the search-incident-to-arrest exception to the warrant requirement—the need to assure officer safety by securing weapons, and the need to protect evidence from concealment or destruction—are deemed to apply to any search of the person of the arrestee, without any need for a particularized showing that weapons or evidence are likely to be found. *Id*. at 235.[1] Thus, the Supreme Court was able to say in *United States v. Chadwick*, 433 U.S. 1 (1977), with respect to the first type of search incident to arrest: "The potential dangers lurking in all custodial arrests make warrantless searches of items within the 'immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved." *Id*. at 14–15. Searches of the person, or of property within the *immediate* control of the person—property "immediately associated with the person of the arrestee," *id*. at 15—are always justified under the search incident to arrest exception to the warrant requirement, upon no more justification than the arrest itself. *Robinson*, 414 U.S. at 235.

But with respect to the second type of search incident to arrest that *Robinson* identified—a search, not of the arrestee's person or of items "immediately associated" with his person, but of the broader area where the arrest occurred—it may be necessary for the State to establish that the

---

[1] As the Supreme Court explained in *Robinson*:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.

414 U.S. at 235.

arresting officer had reason to believe the arrestee could possibly gain access to a weapon or evidence before the Fourth Amendment permits a warrantless search. As the Supreme Court observed in *Chadwick*:

> Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person* of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of the property is no longer an incident of the arrest.

433 U.S. at 15 (emphasis added). More recently, the Supreme Court reiterated this point in the context of a search incident to the arrest of a motorist. *Arizona v. Gant*, 556 U.S. 332 (2009). Speaking not of a search of the person of the motorist, or of some property "immediately associated" with his person, but of a search of the location from which he had emerged immediately before the arrest occurred—specifically, the interior of the motorist's car—the Supreme Court declared: "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Id*. at 339. As this Court observed in *State v. Granville*, 423 S.W.3d 399, 413 & n.54 (Tex. Crim. App. 2014), some courts have applied *Gant*'s principle beyond the context of a search incident to arrest of an automobile interior.[2]

### The Issue on Appeal and Discretionary Review

Appellant essentially argued on appeal that the search of his suitcases was a search incident to arrest of the second kind identified by *Robinson*: a search of the area in which the arrest occurred, not of his person or some container immediately associated with his person. That being the case, he contended, the fact that he had been separated from his suitcases, handcuffed behind his back,

---

[2] *Granville* cited *United States v. Shakir*, 616 F.3d 315, 318 (3d Cir. 2010) (search of defendant's gym bag), and *United States v. Perdoma*, 621 F.3d 745, 750–52 (8th Cir. 2010) (search of a small bag the defendant carried with him into a bus terminal). *See also State v. Carrawell*, 481 S.W.3d 833, 839 (Mo. 2016) (*Gant*'s holding applies "to *all* searches incident to arrest, vehicle or not").

and placed into the custody of multiple police officers in a secure office, means that the warrantless search of his suitcases was unjustified, consistent with the holdings in *Chadwick* and *Gant*. The State, on the other hand, argued that the search of Appellant's suitcases constituted a search of his person, or at least of a receptacle that was immediately associated with his person at the time of his arrest, and that, under *Robinson,* such a search requires no particularized showing of a likelihood that Appellant could obtain a weapon or destroy evidence.

In resolving this dispute, the court of appeals consulted case law from this Court that itself has seemed to take a categorical approach to deciding which types of receptacles are "immediately associated with" the person of the arrestee, and which are not. In *Stewart v. State*, 611 S.W.2d 434 (Tex. Crim. App. 1981), the appellant challenged the lawfulness of a police search of the purse she was carrying at the time of her arrest. Confronted with the question whether such a receptacle fell within the *Robinson* type of search or the *Chadwick* type of search, this Court took the position that "the search of the purse [was] better characterized as a search of items immediately associated with the person of the appellant." *Id*. at 438. Thus, her "purse [was] among those personal effects which, under *Robinson*, may be seized and searched as part of a full search of her person incident to the lawful arrest[.]" *Id*.[3] Along the way, however, the Court recognized cases from other jurisdictions which had held that the search of *other* kinds of receptacles, such as attaché cases, guitar cases, backpacks, and duffel bags, do not fall within *Robinson*'s "immediately-associated-with-the-person" orbit, suggesting that such searches incident to arrest would have to be justified under the rationale of *Chadwick*. *Id*. at 437.[4] Following this lead, the court of appeals in this case

[3] *See also Jones v. State*, 640 S.W.2d 918, 921 (Tex. Crim. App. 1982) (treating a search of the defendant's briefcase as a *Robinson*-type of search of the person, under *Stewart*, because he had it in his hand when arrested); *Snyder v. State*, 629 S.W.2d 930, 934 (Tex. Crim. App. 1982) (search of the wallet found in the defendant's pocket was permissible because that is one of the receptacles *Stewart* identifies as an extension of the defendant's person).

[4] The court of appeals also relied upon the recent opinion of the Second Court of Appeals in *State v. Drury*, 560 S.W.3d 752 (Tex. App.—Fort Worth 2018, pet. ref'd), for its categorical

agreed with Appellant that *Chadwick* controlled, and reversed the trial court's ruling on Appellant's motion to suppress because there was no showing that Appellant could have accessed the suitcases. *Price*, 2019 WL 2013849 at *2.

### Searches of Receptacles Immediately Associated with the Person

The State insists that the court of appeals erred when it held that a suitcase is necessarily excluded from the category of receptacles that may be regarded as "immediately associated with the person" of an arrestee. We agree. This Court's opinion in *Stewart* did not explicitly endorse the view that suitcases and luggage should never be regarded as "immediately associated with the person" of an arrestee; in fact, we later included at least one kind of personal receptacle—a briefcase—among those we deemed to be immediately associated with the defendant's person, even though *Stewart* had listed "attaché case" as among the receptacles that other jurisdictions had held to be subject to a *Chadwick* analysis. *Jones v. State*, 640 S.W.918, 921 (Tex. Crim. App. 1982). *Chadwick* itself dealt with the search of a 200-pound footlocker, which was much less portable than an ordinary suitcase.

As the United States Supreme Court has noted, the Framers of our nation's constitution would have found the search of "luggage" incident to arrest to be quite unremarkable, and perhaps even routine. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2175 (2016). In the course of describing *Robinson*'s search of the person of an arrestee incident to arrest, the Supreme Court in *Birchfield* noted:

> One Fourth Amendment historian has observed that, prior to American independence, "[a]nyone arrested could expect that not only his surface clothing but his body, luggage, and saddlebags would be searched and, perhaps, his shoes,

---

approach. *Price*, 2019 WL 2013849, at *2. In *Drury*, the appellant had been holding a tin can, but he dropped it to the floor as he was being arrested. *Id*. at 754. Citing *Stewart*'s categorical approach to the determination of whether a receptacle is "immediately associated with the person," and recognizing that some kinds, including luggage and guitar cases, have not been deemed to fit within that category, the court of appeals held that the tin can was immediately associated with the appellant's person, so that its search was justified even though the appellant had been immediately handcuffed upon arrest. *Id*. at 755–56.

socks, and mouth as well." W. Cuddihy, The Fourth Amendment: Origins and Original Meaning: 602–1791, p. 420 (2009).

*Id*. Partly on the strength of this observation, the highest courts of several states have recently held that the search of a suitcase in an arrestee's possession at the time of his arrest constitutes a *Robinson* search of property immediately associated with his person, requiring no greater justification than the arrest itself—at least so long as the police intend to take the arrestee to jail or to the stationhouse for booking.

Three such cases merit comparison to the facts of this case, starting with *People v. Cregan*, 381 Ill. Dec. 593, 10 N.E.3d 1196 (2014), an opinion of the Illinois Supreme Court. There, police lawfully arrested Cregan as he disembarked from a train, handcuffed him, and then took the two bags he had "carried" from the train (described as a laundry bag and a "wheeled luggage bag") to the side of the train station, where they searched them. *Id*. 381 Ill. Dec. at 595–96, 10 N.E.3d at 1198–99. Cregan argued that this was not a valid search incident to arrest because, by the time the search was conducted, he was handcuffed and surrounded by police officers, so that he could not reasonably have gained access to the bags. *Id*. 381 Ill. Dec. at 596, 10 N.E.3d at 1199. The Court disagreed, holding that, because Cregan was in "actual possession" of the bags when he was arrested, they were immediately associated with his person, and the search was therefore of the first type described in *Robinson*, requiring no justification beyond the fact of the lawful arrest. *Id*. 381 Ill. Dec. at 606, 10 N.E.3d at 1209. In the course of its analysis, the Court declared: "Defining 'immediately associated' in terms of the nature or character of the object rather than in terms of the defendant's connection to the object at the time of the arrest results is an unworkable rule and produces unpredictable results." *Id*. 381 Ill. Dec. at 602, 10 N.E.3d at 1205.

*State v. MacDicken*, 179 Wash.2d 936, 319 P.3d 31 (2014), from the Washington Supreme Court, is another case with similar facts to those we address here. Police arrested MacDicken leaving a hotel room with a rolling duffel bag, which he was pushing. *Id*. 179 Wash.2d at 939, 39

P.3d at 32. They immediately ordered him to the ground and handcuffed him behind his back. *Id*. His duffel bag was moved about a car's length away (by which time MacDicken was standing up but still handcuffed) and searched. *Id*. The Court rejected MacDicken's challenge to the search, which relied on *Gant*. *Id*. 179 Wash.2d at 941, 39 P.3d at 33. It held that, because MacDicken had the "rolling duffel bag in his possession when he was arrested[,] the police lawfully searched [it] as part of the search of his person pursuant to his arrest." *Id*. 179 Wash.2d at 942–43, 39 P.3d at 34. "A warrant is not needed for a search of an arrestee's person," the Court concluded, "and thus this search was a valid search incident to arrest under both the federal and state constitutions." *Id* 179 Wash.2d at 942, 39 P.3d at 34.

An even more recent opinion that merits comparison is from the North Dakota Supreme Court. In *State v. Mercier*, 883 N.W.2d 478 (N.D. 2016), Mercier's backpack was searched following his detention, handcuffing, and formal arrest. He was then placed in a squad car. *Id*. at 482. Relying upon *Gant*, he argued that the search was not valid because he could not have accessed the backpack by the time the police searched it. *Id*. at 487. The Court rejected Mercier's argument. It observed that, even since *Gant* was decided, the United States Supreme Court has continued to recognize *Robinson*'s holding that searches of the person require no greater justification than a lawful arrest. *Id*. at 489–90 (citing *Maryland v. King*, 133 S. Ct. 1958, 1970–71 (2013)). The Court alluded several times to the United States Supreme Court's observation in *Birchfield*, quoted above, that the Framers would have regarded a search of luggage incident to arrest to be commonplace. *Id*. at 487–88, 492. Ultimately, the Court adopted the possession-at-the-time-of-arrest standard from the Washington and Illinois courts for determining whether a receptacle was "immediately associated with the person." *Id*. at 490. It explained:

> The fact that the backpack sat on the ground for a number of minutes after Mercier . . . was formally arrested had little effect on his relationship to the backpack. It was still an item in Mercier's possession immediately preceding his arrest and would have to go with him to jail when he was brought into custody. It would be illogical to require police officers to leave the backpack on the public street without checking

it, posing a threat to the public and the possibility of its being stolen. Similarly, it would be illogical for the officers to take it with them to the correctional center or police station without checking it, posing a threat to themselves, the arrestee, and the public. The officers would have been entitled—and expected—to do an inventory search on the backpack upon its arrival at the police station or correctional center. *See Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) ("[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."). Such an inventory search would have uncovered the contraband found in Mercier's backpack.

*Id*. at 492–93. Because the backpack was in Mercier's "actual possession immediately preceding his lawful arrest," *and* because it "invariably must be transported along with him" to the police station, the Court found the warrantless search of his backpack to be a reasonable search of Mercier's person incident to his arrest. *Id*. at 493.

### *Lalande v. State*

In 1984, this Court adopted a rule that is very like the North Dakota Supreme Court's holding in *Mercier*. In *Lalande v. State*, the appellant was detained at an airport and frisked for weapons. 676 S.W.2d at 116. When officers discovered that he was carrying an illegal knife, they arrested him and searched an "airline bag claimed by" him. *Id*. Lalande argued that the ensuing search of his airline bag could not be justified as a search incident to arrest because it was actually his companion who had been carrying it at the time of the arrest, not him, and so "it cannot be said to be so connected with [him] as to admit of a search incident to [his] arrest." *Id*. at 118. We rejected this argument, holding that, "where—as in the instant case—the detainee asserts an ownership interest in the item leaving no alternative to its accompanying him into custody, . . . once it becomes unequivocally clear that the item is to accompany the detainee, the right of inspection accrues immediately, and is not limited to inspections carried out within the station itself." *Id*.

In Appellant's case, although there was no specific testimony at the suppression hearing that his suitcases would accompany him into custody, it is simply inconceivable under the

circumstances that they would not. The police already had probable cause by virtue of the informant's tip, as confirmed by the canine alert, that the rolling suitcases contained contraband. They had been taken into custody along with Appellant and moved to the secure office where Appellant was read his *Miranda* warnings. There can be no question that they would have accompanied Appellant and the officers to the police station. Under the rationale of *Lalande*, the officers were entitled to search the suitcases as a search of his person incident to arrest—if for no other reason than that they unquestionably belonged to him and would inevitably accompany him into custody, where a protective search would take place in any event.

The court of appeals acknowledged our holding in *Lalande* but refused to apply it to the facts of this case. *Price*, 2019 WL 2013849, at *2–3. It believed that to apply *Lalande* to uphold the search here would constitute an application of the inevitable discovery doctrine, contrary to this Court's rejection of that doctrine (at least as a matter of Texas's statutory exclusionary rule) in *State v. Daugherty*, 931 S.W.2d 268, 273 (Tex. Crim. App. 1996), decided a dozen years after *Lalande*. We agree with the State, however, that the court of appeals' reluctance to apply *Lalande* was based upon a misapprehension of our holding in that case.

In *Daugherty*, we observed that the inevitable discovery doctrine assumes that an illegal search has already occurred. *Id*. at 270 & 271. From that point, the inevitable discovery doctrine asks whether the exclusionary rule renders inadmissible the product of that search when the same evidence would have come to light by lawful means at some point later in time in any event. *Id*. at 271. Under *Lalande*, however, there is no illegality in the initial search; officers may conduct a search, contemporaneously with the arrest, of any receptacle in the possession of the arrestee which must inevitably accompany him to the police station. There is no need to invoke the concept of inevitable discovery to insulate the product of such a search from the application of the exclusionary rule, because the search was constitutionally reasonable to begin with. We perceive no conflict with *Daugherty*.

## CONCLUSION

We hold that, at *least* where—as in the instant case—an arrestee is in actual possession of a receptacle at the time of, or reasonably contemporaneously to, his custodial arrest, and that receptacle must inevitably accompany him into custody, a warrantless search of that receptacle at or near the time of the arrest is reasonable under the Fourth Amendment as a search incident to the arrestee's person. Such a search requires no greater justification than the fact of the lawful arrest itself. Application of this principle does not turn on the specific nature or character of the receptacle, as the court of appeals believed, but merely on whether it was in the arrestee's possession at the time of arrest, and whether it would inevitably accompany him into custody. Accordingly, we reverse the judgment of the court of appeals.


DELIVERED:     September 23, 2020
PUBLISH