RENDERED:  DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1429-MR

WILLIAM BEMBURY                                                    APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE LUCY ANNE VANMETER, JUDGE
ACTION NO. 19-CR-01326

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; TAYLOR AND L. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE:  William Bembury appeals from a Fayette Circuit Court judgment following his plea of guilty to one count of possession of synthetic drugs.  The plea was conditioned on his right to appeal the denial of his motion to suppress the evidence underlying his conviction.  Having reviewed the record and the applicable law, we reverse.

At the suppression hearing, Lexington police officer Adam Ray, a member of a bicycle unit that patrols the entertainment district in downtown Lexington, testified that he knew Bembury because he saw him at least once a week while patrolling. Officer Ray had received complaints from security staff at the Lexington Public Library that Bembury was trafficking in synthetic marijuana and he had also received information from individuals caught with synthetic marijuana that they had purchased it from Bembury.

At around 6:00 p.m. on a summer evening, Ray and a fellow officer observed a man, identified as Joseph Napier, approach Bembury on the sidewalk outside the courthouse on Main Street. Bembury and Napier walked together to an open courtyard outside a nearby bank building and sat at a table. The officers followed the two men. Officer Ray rode his bike to the upper level of a parking garage where he had an unobstructed view of Bembury and Napier from above. He saw Napier hand Bembury some cash but he could not see the amount. Bembury placed the cash in his backpack. Officer Ray then saw Bembury remove a small piece of white paper and an unknown substance from the backpack. Bembury sprinkled the substance onto the paper, which he then rolled and licked into a cigarette and handed to Napier.

As Napier walked away from the courtyard, the police officers stopped and questioned him. He handed the officers the cigarette and told them he

paid Bembury about $5 for it. Officer Ray testified that, based on his training and experience, he was confident the cigarette contained synthetic marijuana.

Officer Ray returned to the courtyard, where Bembury was still sitting with the backpack on the table. He arrested Bembury for trafficking in synthetic drugs and placed his hands in handcuffs behind his back. Officer Ray conducted a cursory search of the backpack but did not find any contraband. He began completing the arrest paperwork and the backpack remained on the table in front of Bembury. The other police officer then joined him and conducted a more thorough search of the backpack. He found $7 in one-dollar bills, cigarette rolling papers, and a baggie of what appeared to be synthetic marijuana about the size of a golf ball. A lab test later confirmed it was synthetic marijuana. According to Officer Ray, the police kept the cash, rolling papers, and marijuana recovered from the backpack. Ray testified that the backpack was probably returned to Bembury before he was booked into the detention center. Officer Ray did not know if an inventory of the backpack was performed.

Bembury was indicted and charged with trafficking in synthetic drugs, first offense, and being a persistent felony offender in the first degree (PFO I). He filed a motion to suppress the evidence seized from his backpack. Following a hearing and the submission of supplemental memoranda, the trial court entered an order denying the motion. Bembury thereafter entered a plea of guilty to an

amended charge of possession of synthetic drugs, second offense, conditioned on his right to appeal the denial of the suppression motion. The PFO I charge was dismissed. He received a sentence of two years and one day. This appeal followed.

Our standard when reviewing a trial court's denial of a motion to suppress "requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law." *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002) (footnotes omitted).

The Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution guarantee the right to be free from unreasonable governmental searches and seizures. *Lydon v. Commonwealth*, 490 S.W.3d 699, 701-02 (Ky. App. 2016). "When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Bolin v. Commonwealth*, 592 S.W.3d 305, 310-11 (Ky. App. 2019) (quoting *Carpenter v. United States*, ___ U.S. ____, 138 S. Ct. 2206, 2213,

201 L. Ed. 2d 507 (2018)).  Warrantless searches are presumed unreasonable,

"subject only to a few specifically established and well-delineated exceptions."

*Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576

(1967).  In denying Bembury's suppression motion, the trial court relied on the

exception to the warrant requirement available for searches incident to a lawful

arrest.  Bembury does not challenge the lawfulness of his arrest.

There are two distinct types of warrantless searches which may be

made incident to arrest:  (1) a search of the person of the arrestee, and (2) a search

of the area within the control of the arrestee.  *United States v. Robinson*, 414 U.S.

218, 224, 94 S. Ct. 467, 471, 38 L. Ed. 2d 427 (1973).

For purposes of the second type of search, the United States Supreme

Court has delineated what constitutes the "area within the control of the arrestee."

In a series of opinions, it has addressed the permissible bounds of a search of an

arrestee's residence, *see Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L.

Ed. 2d 685 (1969), and vehicle, *see New York v. Belton*, 453 U.S. 454, 101 S. Ct.

2860, 69 L. Ed. 2d 768 (1981), and *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct.

1710, 173 L. Ed. 2d 485 (2009).

This type of warrantless search is justified on the grounds of

protecting the arresting officers and safeguarding any evidence of the offense an

arrestee might conceal or destroy.  *Gant*, 556 U.S. at 339, 129 S. Ct. at 1716.

Consequently, the search must be confined to "the area from within which [an arrestee] might gain possession of a weapon or destructible evidence." *Id*. at 335, 129 S. Ct. at 1714 (quoting *Chimel*, 395 U.S. at 763, 89 S. Ct. at 2040). Additionally, in *Gant*, the Court created an independent exception for a warrantless search of a vehicle's passenger compartment which applies when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id*. at 343, 129 S. Ct. at 1719 (citation omitted).

The warrantless search of Bembury's backpack cannot be upheld as a search of the area within the arrestee's immediate control because at the time of the search, his hands were cuffed behind his back and there was no possibility that he could access the contents of the backpack in order to endanger the safety of the police officers or destroy evidence. The aforementioned exception in *Gant*, which permits a search in order to recover evidence of the crime for which the arrestee is being detained, applies only to automobile searches due to the "circumstances unique to the vehicle context[.]" *Gant*, 556 U.S. at 343, 129 S. Ct. at 1719.

The foregoing limitations, premised on officer safety, the preservation of evidence, and, in the case of the automobile exception, the recovery of evidence, do not apply to the other type of search incident to arrest, that of an arrestee's actual person. "Instead, a custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a

search incident to the arrest requires no additional justification." *Riley v. California*, 573 U.S. 373, 384, 134 S. Ct. 2473, 2483, 189 L. Ed. 2d 430 (2014) (internal quotation marks and citation omitted). It is a longstanding rule that "the mere fact of the lawful arrest" justifies a "full search of the person" and "does not depend on whether a search of a *particular* arrestee is likely to protect officer safety or evidence." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2176, 195 L. Ed. 2d 560 (2016) (citations omitted).

This authority to search the arrestee's actual person without a warrant has been extended to include "personal property . . . immediately associated with the person of the arrestee[.]" *United States v. Chadwick*, 433 U.S. 1, 15, 97 S. Ct. 2476, 2485, 53 L. Ed. 2d 538 (1977), *abrogated by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991).

Thus, the removal and search of the contents of a crumpled cigarette packet from an arrestee's pocket was upheld as reasonable, "even though there was no concern about the loss of evidence, and the arresting officer had no specific concern that [the arrestee] might be armed." *Riley*, 573 U.S. at 384, 134 S. Ct. at 2483 (citing *Robinson*, 414 U.S. at 236, 94 S. Ct. at 477). Similar searches approved by the lower federal courts include personal items carried by an arrestee, such as a billfold and address book, a wallet, and a purse. *Id*. at 392-93, 134 S. Ct. at 2488 (citing *United States v. Carrion*, 809 F.2d 1120, 1123, 1128 (5th Cir. 1987)

(billfold and address book); *United States v. Watson*, 669 F.2d 1374, 1383-1384 (11th Cir. 1982) (wallet); *United States v. Lee*, 501 F.2d 890, 892 (D.C. Cir. 1974) (purse)).

Bembury argues, in reliance on *Chadwick*, *supra*, that his backpack was more akin to luggage, which is entitled to greater privacy protections than items such as a wallet. In *Chadwick*, suspected drug traffickers placed a double locked, 200-pound foot locker on a train in San Diego. When the train arrived in Boston two days later, it was reclaimed by the suspects. Federal agents arrested the suspects and took them and the foot locker to the federal building. The agents searched the foot locker without a warrant about two hours later. The search was held to violate the Fourth Amendment, because the luggage was not personal property "immediately associated with the person of the arrestee" and consequently, once it was reduced to the exclusive control of the law enforcement officers and there was "no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property [was] no longer an incident of the arrest." *Chadwick*, 433 U.S. at 14-15, 97 S. Ct. at 2485.

Allowing the search of the person of the arrestee rests "not only on the heightened government interests at stake in a volatile arrest situation, but also on an arrestee's reduced privacy interests upon being taken into police custody."

*Riley*, 573 U.S. at 391, 134 S. Ct. at 2488. Thus, in the case of the cigarette packet recovered from the arrestee's pocket, a pat-down of his clothing and inspection of the cigarette packet in his pocket "constituted only minor additional intrusions compared to the substantial government authority exercised in taking [him] into custody." *Id*. at 392, 134 S. Ct. at 2488.

But "[t]he fact that an arrestee has diminished privacy interests does not mean that . . . every search is acceptable solely because a person is in custody." *Riley*, 573 U.S. at 392, 134 S. Ct. at 2488 (internal quotation marks omitted). The search of Bembury's backpack was a substantial invasion of his privacy, not a "minor additional intrusion." Admittedly, the backpack was portable and Bembury had control over it throughout the time he was observed by the police, unlike the footlocker in *Chadwick*. But a backpack is functionally distinguishable from a cigarette packet, wallet, address book or even a purse. Like luggage, it "is intended as a repository of personal effects[,]" *Chadwick*, 433 U.S. at 13, 97 S. Ct. at 2484, and is likely to contain many more items of a personal nature than the small items recovered directly from the person of an arrestee.

In *Riley*, *supra*, a cell phone, a small item recovered directly from the person of the arrestee, was nonetheless deemed to contain so much personal information that its warrantless search violated the Fourth Amendment. Although

a backpack does not have the immense storage capacity of a cell phone, the type of personal items that may be stored in it also implicate significant privacy interests.

The Commonwealth has relied on the reasoning of an opinion of the Supreme Court of North Dakota which upheld the warrantless search of a backpack of a lawfully-arrested defendant. *See State v. Mercier*, 883 N.W.2d 478 (N.D. 2016). At the time the backpack was searched, the defendant, Mercier, had already been arrested and placed in the back of a squad car. The North Dakota Court approved the warrantless search on two grounds: first, because the backpack was in Mercier's possession immediately before his arrest, it would have to accompany him to jail when he was taken into custody and could therefore pose a safety threat. "It would be illogical to require police officers to leave the backpack on the public street without checking it, posing a threat to the public and the possibility of its being stolen. Similarly, it would be illogical for the officers to take it with them to the correctional center or police station without checking it, posing a threat to themselves, the arrestee, and the public." *Id*. at 492-93. Second, the officers would have been entitled and expected to perform an inventory search of the backpack, in accordance with established inventory procedures, when it arrived at the police station or correctional center. "Such an inventory search would have uncovered the contraband found in Mercier's backpack." *Id*. at 493.

In reaching this conclusion, the North Dakota Court acknowledged

"the central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Id*. (quoting *Gant*, 556 U.S. at 345, 129 S. Ct. at 1720). Hence, the court cautioned that its holding was "narrowly tailored and applies only when an individual has been validly arrested and the property or items searched as part of the arrestee incident to the arrest invariably must be transported along with him or her to the jail or the police station." *Id*.

At the suppression hearing in Bembury's case, Officer Ray testified that he did not know if an inventory of the backpack was done. He stated that the backpack was "probably" given to Bembury to be booked into the detention center. He testified that the police kept the cash, rolling papers, and marijuana and anything else was returned to Bembury. There was no evidence that the police were concerned about the safety of transporting the backpack, nor was any evidence placed in the record as to where Bembury was taken after the arrest or about inventory procedures at that facility. Thus, the justification underpinning the holding in *Mercier* does not have an evidentiary basis in Bembury's case.

Similarly, no evidence was elicited to justify the search of Bembury's backpack on the grounds of inevitable discovery. "[E]vidence unlawfully obtained by police is nevertheless admissible '[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would

-11-

have been discovered by lawful means[.]'" *Dye v. Commonwealth*, 411 S.W.3d 227, 238 (Ky. 2013) (quoting *Nix v. Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501, 2509, 81 L. Ed. 2d 377 (1984)). In its memorandum submitted to the trial court following the suppression hearing, the Commonwealth for the first time raised the doctrine of inevitable discovery, arguing that the contraband in Bembury's backpack would inevitably have been recovered at the detention center. But no evidence was elicited at the hearing to support this conclusion, beyond Officer Ray's testimony that the backpack was probably returned to Bembury.

For the foregoing reasons, the final judgment of the Fayette Circuit Court is reversed.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.

THOMPSON, L., JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEFS FOR APPELLANT:

Aaron Reed Baker
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky