# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00354-CR

**Joseph Moraga, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
## NO. CR-19-0608-C, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Joseph Moraga appeals from the judgment of conviction after a bench trial for possession of one gram or more but less than four grams of the controlled substance methamphetamine. *See* Tex. Health & Safety Code § 481.115(c). Moraga pleaded true to two enhancement paragraphs. The trial court found the enhancement paragraphs true and assessed sentence at thirty-five years in prison. Moraga contends that the trial court erred because it failed to suppress evidence discovered in a warrantless search and because insufficient evidence supports the conviction. We will affirm the judgment.

## BACKGROUND

This case began as an investigation into a reported kidnapping. San Marcos Police Department (SMPD) patrol officer Dillian Anderson testified that Ruben Mendiola approached her as she finished a traffic stop at a truck stop in San Marcos at about 7:20 a.m. on

December 27, 2018. She said Mendiola reported that he had been carjacked in Austin and brought to San Marcos, robbed, then held against his will at the EconoLodge adjacent to the truck stop. He described his assailants and gave the room number where he had been held. Anderson spoke with the EconoLodge manager and learned that Joseph Moraga, who matched Mendiola's description of his assailant, was staying in the room Mendiola had identified. Anderson watched the EconoLodge's surveillance video, identified Moraga from Mendiola's description, and relayed the information to other SMPD officers. Anderson testified that a still photo from the EconoLodge video showed Moraga and a woman later identified as Sarah Perez getting into the back of a Dodge Ram truck at around 7:44 a.m. Anderson testified that, while getting into the truck, Moraga was holding a red bag and a plastic-looking bag. She testified that in the EconoLodge video Moraga was wearing clothing—including a white shirt—similar to the clothing Moraga was wearing when later arrested at the Country Inn & Suites.

SMPD Detective Sandra Spriegel testified that she obtained the search warrant for the EconoLodge and arrest warrants for Moraga and Perez. When she went to join the search of the EconoLodge, she was flagged down in the parking lot by a man who described Moraga and Perez and said he had given them a ride to Walmart. She testified that an Uber driver told her he took Moraga and Perez to the Country Inn & Suites "later in the morning." Spriegel said the Country Inn & Suites manager said that Moraga and Perez had been to that motel but that, because the Country Inn & Suites had no vacancies, Moraga and Perez were told to return at noon. Moraga and Perez left the Country Inn & Suites, leaving their luggage and property in the lobby. Spriegel testified that she could not remember where the luggage and property was in the lobby—e.g., whether it was in a corner or on a cart. Spriegel testified that law enforcement waited for Moraga and Perez to come back and arrested them inside the motel when they

2

returned. Spriegel testified that she thought the arrest occurred around noon. Spriegel testified that, when Moraga and Perez were taken to the SMPD station, police collected their luggage and took it to SMPD as well. She said that taking an arrestee's personal effects to the SMPD station is typical. Spriegel testified that she did not transport the items seized at the Country Inn & Suites.

Officer Anderson testified that she drove Moraga from the Country Inn & Suites to the SMPD station. Anderson said that Moraga did not have any of his possessions when she drove him. Perez was transported separately at about the same time; Anderson did not know what possessions Perez had with her. Anderson testified that typically, after questioning, a suspect is either released or transported to the Hays County Law Enforcement Center for booking.

SMPD Detective Travis Davidson testified that he was called to investigate the reported carjacking. He interviewed Mendiola, participated in the interview of Perez, and watched the interview of Moraga. He testified that Moraga and Perez were in a dating relationship. Davidson testified that he later debunked Mendiola's carjacking story; he did not testify as to a particular time or date that the debunking occurred.

Spriegel testified that she and SMPD detective Cassandra Raven searched the transported items. Spriegel testified that, at the time of the search, SMPD was investigating the reported robbery and she was looking for items Mendiola had reported as stolen. She said that she did not know which of the luggage or bags belonged to which arrestee. She also said that she was unaware if Moraga or Perez gave consent to the search and that it did not occur to her to seek a search warrant because her search of the luggage and bags was a search incident to arrest. Spriegel testified that bringing a person's individual items into the police department triggers

3

safety concerns because police do not know what weapons might be contained in those items; in this case, Mendiola had said Moraga had robbed him. She said the safety concerns persisted even though the belongings in this case were secured and the arrestees did not have access to them. She said that she could not answer why there would be a safety concern when an arrestee and his belongings are transported separately.

The State introduced a series of photos showing items discovered in SMPD's search of the arrestees and the bags taken from the motel lobby. Spriegel said she documented the items found to make sure that nobody could say SMPD stole anything, particularly cash or similar items. Looking at photos, Spriegel testified that the items searched included a purse containing a change bag, cell phones, and receipts printed between 7:45 a.m. and 11:21 a.m. on December 27, 2018, from McDonald's, Walmart, and Jack in the Box. Spriegel also testified about items found in a CVS bag that contained other bags. The CVS bag contained a white t-shirt, boxer shorts, and a white bag tied into a knot that contained a glass jar of marijuana, a lighter, a scale, some cigarillo wrappers, and a smaller bag containing 14 multicolored pills that she suspected were narcotics. Spriegel testified that photos showed drug paraphernalia taken from Moraga's pockets.

Lila Pipersburgh, a forensic chemist with the Austin Police Department, testified that she tested eight pills from the exhibit elsewhere identified as coming from a bag inside the CVS bag. The eight pills combined weighed 1.22 grams and contained methamphetamine.

## DISCUSSION

Moraga raises two issues. He contends that the evidence is insufficient to support his conviction and that the trial court erred by denying his motion to suppress.

4

**I.      The trial court did not abuse its discretion by denying Moraga's motion to suppress the methamphetamine.**

By issue two, Moraga contends that the trial court abused its discretion by overruling his motion to suppress the search of his luggage because it was without a warrant, probable cause, consent, or any voluntariness, citing *U.S. v. Chadwick*, 433 U.S. 1 (1977).

**A.      Standard of review and applicable law**

We review a trial court's ruling on a motion to suppress for an abuse of discretion and can overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011).  We apply a bifurcated standard of review:  we defer almost totally to a trial court's determination of historic facts and of mixed questions of law and fact that rely on the credibility of a witness but review de novo pure questions of law and mixed questions that do not depend on credibility determinations.  *Id*. When, as here, a trial court does not enter any findings of fact on the denial of a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *See Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006).  We must assume the trial court made implicit findings of fact that support the decision so long as those findings are supported by the record.  *Id*.  We view the evidence in the light most favorable to the ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011).  "We will sustain the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'"  *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

The Fourth Amendment protects against unreasonable searches and seizures by government officials.  U.S. Const. amend. IV.  For warrantless searches, the State has the burden

5

to establish applicable exceptions to the warrant requirement including the search-incident-to-arrest exception. *State v. Rodriguez*, 521 S.W.3d 1, 10 (Tex. Crim. App. 2017). There is no dispute that the methamphetamine was discovered pursuant to a warrantless search.

Police officers may conduct a warrantless search incident to the lawful arrest of a person and the area in the person's immediate control in order to search for items to prevent the arrested person from gaining access to a weapon or destroying evidence. *See Chimel v. California*, 395 U.S. 752, 763 (1969). A search that is "proximate in time and place to the arrest, that is limited to the person of the arrestee and the area within his reach is a permissible search incident to arrest." *Carrasco v. State*, 712 S.W.2d 120, 122 (Tex. Crim. App. 1986). A search incident to arrest extends to "objects immediately associated with the person of the arrestee or objects in an area within the control of the arrestee." *Id*. at 123.

Moraga relies on *Chadwick* in which the United States Supreme Court held that evidence found in the post-arrest search of a double-locked footlocker seized in an automobile stop should be suppressed, holding:

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of the property is no longer an incident of the arrest.

433 U.S. at 15. The *Chadwick* court held, "The initial seizure and detention of the footlocker, the validity of which respondents do not contest, were sufficient to guard against any risk that evidence might be lost. With the footlocker safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant." *Id*. at 13. The court held that a search conducted more than an hour after federal agents gained exclusive

6

control of the footlocker and long after respondents were securely in custody could not be viewed as incidental to the arrest or as justified by any other exigency. *Id.* With no exigency shown to support the need for an immediate search, a warrant was necessary once the property to be searched came within the exclusive dominion of police authority. *Id.*

The Texas Court of Criminal Appeals has held, however, that, once it becomes "unequivocally clear" that an arrestee will be taken to the police station where the right of the police to conduct an inventory search of his property accrues, a search of the property is permissible. *Lalande v. State*, 676 S.W.2d 115, 118 (Tex. Crim. App. 1984). That court addressed the admissibility of a pistol seized after a search incident to an arrest for possession of a knife. *Id.* at 116. Police stopped Lalande and searched him, arrested him for possession of the illegal knife, searched a bag that his companion was carrying that Lalande claimed, and found a pistol that was introduced in Lalande's murder trial. *Id.* The court found that "where the detainee asserts an ownership interest in the item leaving no alternative to its accompanying him into custody . . . the right of inspection accrues immediately . . . ." *Id*. at 118.

More recently, the Court of Criminal Appeals has held regarding searches of luggage and similar "receptacles" that

> when an arrestee is in actual possession of a receptacle at the time of, or reasonably contemporaneously to, his custodial arrest, and that receptacle must inevitably accompany him into custody, a warrantless search of that receptacle at or near the time of the arrest is reasonable under the Fourth Amendment as a search incident to the arrestee's person. Such a search requires no greater justification than the fact of the lawful arrest itself.

*Price v. State*, 662 S.W.3d 428, 438 (Tex. Crim. App. 2020). In that case, police received a tip that Price would be flying into an airport with marijuana he had purchased out of state. *Id*. at

431. A drug dog alerted to the suitcases bearing Price's name; when Price retrieved the suitcases at baggage claim and rolled them to the curb, police arrested Price, seized the suitcases, transported both to a secure office, and opened the suitcases and found marijuana in them. *Id.* The trial court denied a motion to suppress, but the court of appeals relied on *Chadwick* in holding that the warrantless search was not justified as a search incident to arrest. *Price v. State*, No. 14-18-00628-CR, 2019 WL 2013849 at *2 (Tex. App.—San Antonio May 8, 2019) (mem. op., not designated for publication), *rev'd*, *Price*, 662 S.W.3d at 438. The court of appeals noted that *Chadwick* relied on the fact that the urgency to search had cooled an hour after the defendant was arrested and jailed and the footlocker had been moved to another building. *Id.* at *2. Holding that Price's suitcases were no longer "immediately associated" with him, the court of appeals held that the warrantless search was improper even if an inventory search at the jail would have revealed the contraband discovered at the airport office. *Id.* at *2-3. The court of appeals cited the Court of Criminal Appeals's rejection of the doctrine of inevitable discovery in *Daugherty*, which the court of appeals wrote held that illegally obtained evidence is not admissible simply because it would have been obtained by lawful means. *Id.* at *3 (citing *State v. Daugherty*, 931 S.W.2d 268, 273 (Tex. Crim. App. 1996)).

The Court of Criminal Appeals majority in *Price* distinguished *Chadwick* and *Daugherty* and reversed the court of appeals. 662 S.W.3d at 435, 438. The court noted that *Chadwick* concerned a 200-pound footlocker, which is less portable than a suitcase. *Id.* at 435. The *Price* court distinguished its rejection of the inevitable-discovery doctrine in *Daugherty*. *See id.* at 438. The court limited *Daugherty* to instances in which there was an illegal search before a legal search; finding that the first search in *Price* was a legal search incident to arrest, the Court of Criminal Appeals concluded that the *Price* facts did not trigger the *Daugherty* exclusion. *Id.*

8

The court cited favorably a North Dakota Supreme Court opinion permitting the search of an arrestee's backpack following his detention, handcuffing, and formal arrest even though he was in a squad car and could not have accessed the backpack when police searched it. *Id.* at 436 (citing *State v. Mercier*, 883 N.W.2d 478, 487 (N.D. 2016)). The North Dakota court held that the fact that the backpack sat on the ground for a number of minutes after arrestee was formally arrested had little effect on his relationship to the backpack. It was in his possession immediately preceding his arrest and would have to go with him to jail; the court concluded that police officers could not logically be required to leave it unattended (posing a threat to the public and the possibility that the backpack would be stolen) or to take it to the police station without searching it (posing a threat to themselves, the arrestee, and the public). *Id.* (citing *Mercier*, 883 N.W.2d at 492-93).

B.     **Argument and analysis**

Moraga argues that his case is distinct from *Price* and *Mercier* because he had been away from the bags before he was arrested upon his return to the Country Inn & Suites. He argues that it was not inevitable that the luggage would accompany him into custody and that there was no evidence that the plastic bag he was seen with in the EconoLodge surveillance video was the same plastic bag seized in the Country Inn & Suites. He argues that no evidence showed that the baggage would not be reasonably or safely stored at the motel awaiting his return following his release from police custody.

Though Moraga left the bags at the motel, the only evidence is that he and Perez left the bags in the Country Inn & Suites until they could check into a room. The record is not clear how long Moraga was away from the bags before his arrest. Among the items inventoried in the search were receipts from that morning from McDonald's at 7:45, Walmart at 8:23 and

9

8:28, and Jack-in-the-Box at 11:21. Spriegel testified that Moraga and Perez returned to the Country Inn & Suites and were arrested inside the motel around noon. The evidence supports a finding that Moraga's possession of the bags was reasonably contemporaneous to his arrest. *See Price*, 662 S.W.3d at 438.

The trial court reasonably could have concluded that it was inconceivable under the circumstances that the bags would not accompany Moraga into custody. *See id.* The court reasonably could have found that the reasonable expectation is that police would, after arresting Moraga and taking him to SMPD's station, take his belongings to the station for safekeeping and not force Moraga to abandon them and risk theft and expect the motel and its staff to store bags that may contain contraband and unknown threats for a person who had not checked in to the motel. *See id.* at 436-37 (citing *Mercier*, 883 N.W.2d at 492). The trial court reasonably could also have concluded that it would be illogical to require police officers to take the bags to the police station without checking them, posing a threat to themselves and the public. *Id.* (citing *Mercier*, 883 N.W.2d at 493). The Court of Criminal Appeals held that such a warrantless search incident to the arrestee's person requires no greater justification than the fact of the lawful arrest itself. *See id.* at 438. The trial court reasonably could have concluded that Moraga's expectation of privacy in a plastic bag he left in a motel lobby is not as strong as that in *Chadwick* where the item improperly searched was a double-locked footlocker from the trunk of a car.[1] The legality of Moraga's arrest under the warrant is not at issue on this appeal, and we conclude that, under *Price*, the trial court did not abuse its discretion by denying the motion to suppress the search of his bags incident to that arrest.

---

[1] We note also that the contents of the unsecured plastic bags were more susceptible to accidental loss than were the contents of the double-locked footlocker.

10

We resolve issue two in favor of the judgment.

## II. The evidence is sufficient to support Moraga's conviction.

By issue one, Moraga asserts that the judgment is not supported by sufficient evidence.

### A. Standard of review and applicable law

When reviewing whether sufficient evidence supports a criminal conviction, we assess whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard gives full play to the responsibility of the trier of fact to resolve fairly conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319.

The factfinder is the sole judge of credibility and weight to attach to the testimony, and the factfinder may draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319). Reviewing courts determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Murray*, 457 S.W.3d at 448–49 (citing *Hooper v. State*, 214 S.W.3d 9, 12 (Tex. Crim. App. 2007)).

11

The offense of unlawful possession of a controlled substance has two elements: (1) that the accused exercised care, control, and management over the contraband; and (2) that the accused knew the matter was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); *see also* Tex. Health & Safety Code § 481.115(a), (c). A defendant's mere presence is insufficient to establish possession. *Tate*, 500 S.W.3d at 413 (citing *Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982)). The Texas Court of Criminal Appeals has identified the following non-exclusive factors that "may indicate a link connecting the defendant to the knowing possession of contraband":

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id*. at 414 (quoting *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006)). It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

Further, an individual can possess drugs jointly with others. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). A person in joint possession necessarily has "joint access or control." *De La Torre v. State*, 583 S.W.3d 613, 619 (Tex. Crim. App. 2019) (recognizing that statutory definition of possession does not preclude theory of joint

12

possession—"the possibility of simultaneous possession of the same narcotics by multiple people"). When the contraband is not in the exclusive possession of the defendant, a factfinder may infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference. *Tate*, 500 S.W.3d at 413–14 (citing *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005)).

Ultimately, although the *Tate* factors can guide a court's analysis, the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was the factfinder rationally justified in finding guilt beyond a reasonable doubt? *Id.* at 414 (citing *Jackson*, 443 U.S. at 318–19).

### B.    Argument and analysis

Moraga contends that the State failed to establish any indicia of possession. He argues that he was in control of the bag containing the drugs, if at all, hours before the seizure and search. He asserts that he was not in control of or near the bags when he was arrested or when the bags were seized, transported, and searched. Though he possessed drug paraphernalia when arrested, the record does not establish that he was under the influence of an illegal substance when arrested. There is no evidence of incriminating statements or an attempt to flee. Further, Perez pleaded guilty to possession of methamphetamine and no witness testified which bag belonged to Moraga and which to Perez.

However, an SMPD detective testified that Country Inn & Suites management said that Moraga and Perez had left the bags that the later search revealed contained methamphetamine. The EconoLodge surveillance video showed Moraga carrying a plastic bag like the one seized at the Country Inn & Suites that contained methamphetamine. In addition to the drug paraphernalia found on Moraga, the CVS bag containing the bag that had the

13

methamphetamine also contained marijuana, a lighter, cigarillo wrappers, and a scale—items regularly seen in narcotics investigations. Besides the methamphetamine, the CVS bag contained a white t-shirt and boxers, and Moraga was wearing a white t-shirt on the morning of the arrest. Further, there is no requirement that Moraga have had exclusive possession of the methamphetamine. *See Tate*, 500 S.W.3d at 413-14. Though Moraga and Perez had left the items at the Country Inn & Suites sometime during the morning of the arrest while waiting for a room to become available, they were returning to check in to a room at noon. There is no dispute that the substance seized was methamphetamine and weighed 1.22 grams.

Viewing the evidence in the light most favorable to the State as required by the standard of review, we conclude that the record contains sufficient evidence to support the finding that Moraga possessed the methamphetamine knowing that it was a controlled substance. We resolve issue one in favor of the judgment.

## CONCLUSION

We affirm the trial court's judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed: July 14, 2023

Do Not Publish

14